**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **WSOU INVESTMENTS, LLC D/B/A** | § | |
| **BRAZOS LICENSING AND** | § | **CIVIL ACTION 6:20-cv-00487-ADA** |
| **DEVELOPMENT,** | § | **CIVIL ACTION 6:20-cv-00488-ADA** |
| *Plaintiff,* | § | **CIVIL ACTION 6:20-cv-00489-ADA** |
| | § | **CIVIL ACTION 6:20-cv-00490-ADA** |
| | § | **CIVIL ACTION 6:20-cv-00491-ADA** |
| **v.** | § | **CIVIL ACTION 6:20-cv-00492-ADA** |
| | § | **CIVIL ACTION 6:20-cv-00493-ADA** |
| | § | **CIVIL ACTION 6:20-cv-00494-ADA** |
| | § | **CIVIL ACTION 6:20-cv-00495-ADA** |
| **ZTE CORPORATION, ZTE (USA)** | § | **CIVIL ACTION 6:20-cv-00496-ADA** |
| **INC, AND ZTE (TX), INC.,** | § | **CIVIL ACTION 6:20-cv-00497-ADA** |
| *Defendants.* | | |

## AMENEDED MOTION FOR ENTRY OF DISPUTED PROTECTIVE ORDER

ZTE Defendants now file an amended motion for entry of disputed Protective Orders and provide *both* parties' positions. Plaintiff WSOU unilaterally moved for entry of its Protective Order, *see* Dkt. No. 73,[1] without ZTE Defendants' respective positions and without ZTE Defendants' confirmation or permission. WSOU's filing was premature and significant portions of these disputes could have been avoided if WSOU properly provided its positions beforehand—in fact, many of WSOU's positions were first disclosed to ZTE Defendants in the unilateral filing itself (and after consideration are agreeable). ZTE Defendants incorporated their positions herein after WSOU's positions (copied from Dkt. No. 73) below.

---

[1] There are 11 pending cases. Citations throughout refer to new WDTX Case Nos. -00487 through -00497, and specific citations reference to the docket for WDTX Case No. -00487.

Amended Motion for Entry of Disputed Protective Order                                    Page | 1

**TO THE HONORABLE COURT:**

Plaintiff WSOU moves for entry of a disputed protective order. While the parties have reached agreement on most items, certain disputes remain. Each parties' respective positions are below. A proposed protective order with the disputes highlighted is attached as Appendix A.

## **Plaintiff WSOU's Position**

There are six principally disputed issues in the protective order:

(1) Access by Outside Counsel and their Staff (Sections 5(a) and (b))

(2) Resolution of Disputes for Disclosed Experts (Section 5(e)

(3) Definition of Source Code (Section 8)

(4) Source Code Handling (Section 11)

(5) Prosecution Bar (Section 12)

(6) Retaining Information Required by Law as Opposed to Destroying (Section 23)

WSOU sought to avoid a dispute and Court involvement by proposing language that ***opposing*** parties had recently agreed to in negotiations.[2] In particular, in the meet and confer between the parties on April 21, 2021, WSOU pointed ZTE to the just-entered WDTX protective order between WSOU and Microsoft in their 12 cases, namely the ***agreed*** language the parties submitted to the Court (hereinafter the WSOU-Microsoft Agreed Language). *See e.g.*, *WSOU Investments LLC v. Microsoft Corporation*, Case No. 6:20-cv-454, Dkt. 68 (WDTX March 29, 2021) (Joint Motion), which the Court subsequently entered at Dkt. 71 (WDTX March 30, 2021) (Order granting protective order; the identical order was entered in Case Nos. -454 through -465).

---

[2] If history repeats itself, ZTE will engage in *ad hominem* attacks as opposed to addressing the merits of the issues before the Court. WSOU's refusal to engage with ZTE in such ancillary attacks should not be interpreted as WSOU agreeing with anything ZTE says. Rather, WSOU chooses to focus on the issues.

WSOU did not come up with this language on its own; rather, it was part of a negotiated process. The WSOU-Microsoft Agreed Language was presented as an example of how reasonable parties working with one another could agree. There is nothing controversial about the WSOU-Microsoft Agreed Language, and, most of the proposed language is typical in agreed protective orders.

ZTE was unable to present any actual problems it had concerning the WSOU-Microsoft Agreed Language – other than principally objecting to any deviation from the Court's "Sample Protective Order." This was despite the fact that ZTE also had its own deviations from the Court's Sample Protective Order.

1.  **Plaintiff's Position – Section Sections 5 (a) and (b) – Access by Outside Counsel and their Staff**

WSOU's proposal for sections 5(a) and 5(b) is identical to the WSOU-Microsoft Agreed Language. *See* 6:20-cv-454, Dkt. 71 at 4 (referencing the same section numbers).

The proposal in section (b) corrects a practical problem that arises from the phrase "Employee of [outside counsel of record in section (a)]," which ZTE proposes. Rather than being an ***employee*** of an actual counsel or record (an individual), attorneys, paralegal, and staff are usually employed by a ***firm*** – an entity. This is true even in situations involving partnerships. Also, the term "employee" connotes a particular ***type*** of relationship, which could exclude attorneys in an "of-counsel" role or partners who choose to have their pay flow through a corporation – as opposed to being an "employee" of the firm in which they (or their corporation) are a party. Both WSOU and Microsoft agreed to the language now presented to correct these problems; ZTE refuses such language.

WSOU identified for ZTE the consequences of the language it proposes. Presently, only one attorney has appeared for ZTE. Yet, multiple ZTE attorneys have been involved in these cases. WSOU has already disclosed confidential information. Unless those other ZTE attorneys (and

staff) are "[e]mployees of [the single attorney that has appeared]" as proposed by ZTE, they will be unable to review designated material.

The proposal in Section (a) also corrects a similar problem to allow "outside counsel retained for purpose of this litigation" to review material ***before*** they appear. This would include, for example, trial counsel and appellate counsel. It would also cover other outside attorneys at the same firm (as counsel of record) who have been retained but have not yet appeared. When addressing disputes such as this, Courts often had no problems with additional counsel reviewing protected material – providing they agreed to be bound by the protective order. In particular, in another case in the EDTX where Finnegan (ZTE's counsel) was representing another party, Finnegan fought to gain access for IPR counsel – despite the fact that such counsel had not made an appearance. Judge Gilstrap ruled that confidential information could be shared with Finnegan attorneys – providing the following:

> "***if and as soon as*** **[IPR counsel - Finnegan] files a notice with this Court Certifying**
> **(1) that it is or reasonably expects to be counsel of record for [Defendant] in a**
> **Related Proceeding as defined by the Protective Order1 and (2) that Finnegan, Finnegan's attorneys, and Finnegan's employees will strictly comply with all of the provisions of the Protective Order in this case and this Order."**

*Luminati Networks, Ltd. v. Bi Science, Inc. et al*. Case No. 2:18-cv-483-JRG (E.D. Tex) (Dkt. 81) (April 24, 2019). The WSOU-Microsoft Agreed language simply reflects this reality. And, WSOU has noted that any such counsel would need to be comply with all provisions of the protective order. Again, both WSOU and Microsoft agreed to the language now presented to correct these problems; ZTE refuses such language.

ZTE's only reasons for objecting to the WSOU-Microsoft Agreed language is (1) it is not the Court's Sample Protective Order, and (2) an argument that "employees" refer to the employees

of the firm – not the actual counsel. As to the first objection, parties often deviate – just like ZTE chose to do multiple times in the present protective order. Here, the deviation corrects an issue recognized by WSOU and Microsoft. As to second objection, WSOU disagrees as to ZTE's interpretation, which is contrary to the plain language. The above-quoted Gilstrap opinion even notes a difference between the firm, its attorneys, and its employees.

### 2. Resolution of Disputes – Section 5(e)

For Section 5(e), WSOU agreed to ZTE's request to deviate from the Court's Sample Protective Order. In particular, ZTE requested that parties supply less information about a potential expert than required by Court's Sample Protective Order. However, ZTE refused to agree to WSOU's request for a quick resolution of disputes concerning experts – if one arises – in Section 5(c).

WSOU again borrowed from the WSOU-Microsoft Agreed language to attempt to avoid disputes. *See* 6:20-cv-454, Dkt. 71 at 5 (referencing the section (e)). The timeline for resolution is identical to the WSOU/Microsoft's timelines (7 days before access and 3 days for a prompt meet and confer) – except that WSOU agreed to 7 days for a motion instead of 3 (as agreed with Microsoft) in attempts to move closer to ZTE's proposal of 15 days. ZTE has provided no reason why it believes the quick resolution schedule is inappropriate or unworkable. And, ZTE has entered into protective orders similar timelines as those proposed by ZTE.[3] Given ZTE's request to ***reduce*** the amount of information required in disclosing an expert, it also makes sense to ***reduce***

---

[3] *See Agis Software Development, LLC v. Huawei, Inc. et al*, Case No. 2:17-cv-517-JRG (Lead Case)(E.D. Tex.)(Apr. 9, 2018) ("Within seven (7) days of the disclosure . . . the producing Party may notify the receiving Party in the writing that it objects to disclosure of Protective Material.")("If the Parties are unable to resolve any objection, the objecting Party may file a motion with the Court with ten (10) days of the notice . . . ").

the timeline for resolving disputes – as done in the WSOU-Microsoft Agreed language. If there

truly is an objection, the parties should quickly work to resolve it.

Also, there should be nothing objectionable about a party disclosing materials to a proposed

expert after the time period has expired (in the last portion of Section 5(e)).

### 3. Definition of Source Code – Section 8

WSOU sought to fend off future disputes by providing the typical definition of "source

code" used by parties – "a text listing of computer instructions, commands, and data definitions

expressed in a form suitable for input to an assembler, compiler, or other translator." This is in the

definition for the WSOU-Microsoft Agreed language (*See* 6:20-cv-454, Dkt. 71 at 6 (referencing

the same), and parties have routinely used it.[4]

Such listing should not be surprising – since it echoes dictionary definitions near verbatim.

---

[4] *See* e.g., *Kojicast, LLC v. Dailymotion S.A.,* Case No. 2:18-cv-146 (E.D. Tex.)(Aug. 30, 2018)(" computer source code (i.e., a text listing of computer instructions, commands and data definitions expressed in a form suitable for input to an assembler, compiler, or other translator) to be compiled or assembled into an executable computer program . . . "). *Uniloc USA, Inc. et al. v. HTC America, Inc.* Case Nos. 2:17-cv-1558 (W.D. Was.)(Jul. 18, 2018) (""Source Code" means a text listing of computer instructions, commands and data definitions expressed in a form suitable for input to an assembler, compiler, or other translator to be compiled or assembled into an executable computer program."); 13 Cases: *Uniloc 2017, LLC v. Google LLC*, Case Nos. 2:18-cv-491-504-JRG-RSP (E.D. Tex.)(Jun. 14, 2019) ("computer source code (i.e., a text listing of computer instructions, commands and data definitions expressed in a form suitable for input to an assembler, compiler, or other translator). . . "); 5 Cases: *Uniloc 2017, LLC v. Google LLC*, Case Nos. 2:18-cv-548, 550-553-JRG (E.D. Tex.)(Jul. 2, 2019)( "computer source code (i.e., a text listing of computer instructions, commands and data definitions expressed in a form suitable for input to an assembler, compiler, or other translator). . . "); *PayRange Inc. v. Kiosoft Technologies, LLC et al* ((S.D. Fl.)(Oct. 13, 2020)("Source Code is defined in the Protective Order to mean the Parties' alphanumeric text listing commands that the Parties compile and assemble to develop the Parties' proprietary software-based products.").



WSOU is concerned that absent such a typically used definition, non-source code will be characterized as source code – requiring Court resolution down the road.

### 4. Plaintiff's Position – Section 11, Source Code Handling

Again, having already been through protective order negotiations with a sophisticated party (Microsoft), WSOU simply proposed the WSOU-Microsoft Agreed Language. *See* 6:20-cv-454, Dkt. 71 at 7-11 (referencing Section 10). These proposals are reasonable.

### a) Three computers across the cases with computers located in "Austin, Dallas, or otherwise agreed" – Section 11(a)

Rather than have one individual computer per case (or 12 computers), WSOU agreed to a reasonable three computers across cases using the WSOU-Microsoft Agreed Language. This setup has worked well for the ongoing source code review in the cases between WSOU and Microsoft. The only deviation from the WSOU-Microsoft Agreed Language is that WSOU *also* agreed to have the source code produced in either Austin *or Dallas* – given ZTE's deponents declaration

that such source code is at the location of outside counsel's office in Dallas. *See* e.g., Case No. 6:20-cv-487 (Declaration of ZTE USA representative Ray Wood at ¶12: "technical documents and source code are stored at the Upshaw PLLC law firm in Dallas County, Texas.*"* This Court has previously ordered other parties to produce its code in Austin. See e.g., *WSOU v. Microsoft*, Case No. 6:20-cv-00454, ECF No. 42 ("The Court will have the source code made available in Austin.") ZTE rejected this language because such language was in the Sample Protective Order. Yet ZTE has not explained why such language is unreasonable.

### b) Minimum Display Screen Size of Seventeen-Inches – Section 11(a)

There is nothing remarkable about WSOU's requests that the display screen or monitor be at least seventeen inches. This prevents ZTE from providing an unreasonably small screen size of, for example, thirteen inches (or even smaller). Parties routinely agree to such screen sizes. That's why it was included in the WSOU-Microsoft Agreed Language. ZTE has not explained why it refuses to agree – other than repeating that it is not in the Sample Protective Order.

### c) Analysis Tools – Section 11(a)

Parties often typically include clauses addressing analysis tools. ZTE refused to include such a clause. WSOU proposed the identical clause from the WSOU-Microsoft Agreed Language. Absent such a clause, Court intervention will be required should ZTE refuse to place analysis tools on the source code computer.

### d) Provision for Handling in Light of Covid-19 or Other Emergencies – Section 11(a)

Given the effects of COVID-19, parties have also often typically included clauses addressing an agreement to work in good faith when emergencies such as COVID-19 arise. ZTE refused to include such a clause or explain why it objects (other than it not being in the Sample Protective Order). WSOU proposed the identical clause from the WSOU-Microsoft Agreed Language. There should be nothing controversial about WSOU's requested clause.

**e)   Clarifying Language – "Direct Reports" vs. "Staff" – Footnote 3 for Section 11(a)**

Like in other areas of the protective order (and in hopes of avoiding disputes), WSOU proposed language from the WSOU-Microsoft Agreed Language, namely using the term "staff," which Microsoft and WSOU agreed was clearer than the term "direct reports," which can be ambiguous. ZTE identified no problems with using the term "staff" as opposed to "direct reports" but refused because it was not in the Sample Protective Order.

**f)   The Number of Pages of Source Code Printout – Section 11(h)**

The Court's Sample Protective Order does not include a default number of printouts for Source Code. To avoid a dispute down the road as to whether a requested amount is reasonable, WSOU proposed the amount ordered by the Court in resolving one of the few disputes between WSOU and Microsoft – 1,000 pages for each software release. *See* 6:20-cv-454, Dkt. 71 at 10. WSOU believes the Court's resolution of such a dispute between WSOU and Microsoft is, also, appropriate for the cases between WSOU and ZTE. ZTE, again, objects because it is not the Court's Sample Protective Order.

**g)   Source Code Handling at Depositions and Court Proceedings – Section 11(k)**

Given the ongoing concerns with COVID-19 and the reality that depositions and hearings are occurring remotely, WSOU has proposed language that would allow communications of Source Code Material to occur, for example, via Zoom (or other technology) during a remote hearing with the Court or at a remote deposition. The WSOU-Microsoft Agreed Language allowed the ability for Source Code Material to be transmitted electronically via a deposition or at a hearing. ZTE's proposal, which is not in the Court's Sample Protective Order, ensures the ***inability*** to reference Source Code Material at such a remote deposition or at hearing – via Zoom or otherwise. Certainly, ZTE could not argue that its source is more sensitive than Microsoft's.

**5. Prosecution Bar – Section 12**

**a) The Bar Should Not Apply Those Who Don't Actually "Access" Materials and Financial Information (Other than Technical Information)**

WSOU proposed often-used language concerning when a prosecution bar attaches, namely (1) when an individual ***actually*** obtains information (as opposed to only having "access to" it) and (2) when an individual obtains "technical information" as opposed to "financial data." Counsel has "access to" designated material when they make an appearance – even if they never access or otherwise learn about designated material. Attaching a prosecution bar in such circumstances is non-sensical. There is no harm. Likewise, there is no risk of harm coming from one who only looks at financial information and not technical information relevant to the case. Under ZTE's proposal, the prosecution bar would attach to a financial consultant who had access to, but never looked at, any confidential sales numbers in a case.

There is nothing controversial about WSOU's proposal. It is identical word-for -word to the WSOU-Microsoft agreed language. Other parties have also recognized this common-sense

approach – including parties such as Google, Apple, and Huawei.[5] And, ZTE requested entry of a protective order having near-identical language.[6]

### b) Alternative Time Language

WSOU also proposed often-used language in prosecution bars concerning an alternative time period when a prosecution bar should no longer apply to a person – "two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL." This language reflects the simple fact that memories fade over time and that the principal expiration clause, which is tied to the case ending (including the appeals), can go on for years. WSOU's proposal is identical word-for-word to the WSOU- Microsoft Agreed Language. And, this same language has either been agreed to by parties or used by Courts in at least the following cases:

- 13 Cases: *Uniloc 2017, LLC v. Google LLC*, Case Nos. 2:18-cv-491-504-JRG-RSP (E.D. Tex.)(Jun. 14, 2019) ("two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL . . . ")
- 5 Cases: *Uniloc 2017, LLC v. Google LLC*, Case Nos. 2:18-cv-548, 550-553-JRG (E.D. Tex.)(Jul. 2, 2019)( "two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL . . .")

---

[5] *See* e.g., *Uniloc 2017, LLC v. Google LLC*, Case Nos. 2:18-cv-491-504-JRG-RSP (E.D. Tex.)(Jun. 14, 2019) ("directed to technical information relevant to the case, but excluding financial data or non-technical business information (collectively, "HIGHLY SENSITIVE TECHNICAL MATERIAL"), who obtains, receives, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE TECHNICAL MATERIAL . . . "); 5 Cases: *Uniloc 2017, LLC v. Google LLC*, Case Nos. 2:18-cv-548, 550-553-JRG (E.D. Tex.)(Jul. 2, 2019)( "directed to technical information relevant to the case, but excluding financial data or non-technical business information (collectively, "HIGHLY SENSITIVE TECHNICAL MATERIAL"), who obtains, receives, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE TECHNICAL MATERIAL . . . "); *Agis Software Development, LLC v. Apple, Inc.*, Case No. 2:17-cv-516-JRG (E.D. Tex.)(Oct. 26, 2017) ("who obtains, receives, or otherwise learns of, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL of a technical nature under this Order.");

[6] *See Agis Software Development, LLC v. Huawei, Inc. et al*, Case No. 2:17-cv-517-JRG (Lead Case)(E.D. Tex.)(Apr. 9, 2018) ("who obtains, receives, or otherwise learns of, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL of a technical nature under this Order.").

- *Kojicast, LLC v. Funimation Productions, LLC*, Case Nos. 2:19-cv-132 (E.D. Tex.)(Jul. 19, 2019)("two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL . . . ")
- *Keurig, Incorporated v. Sturm Foods, Inc.*, Case No. 10-841-SLR-MPT (D. Del.)(July 6, 2001)("two years after that person's last review of the Designated Material") ● *Uniloc 2017, LLC v. Kaspersky Lab, Inc.*, Case No. 2:19-cv-219-JRG (E.D. Tex.)(Nov. 19, 2019)( ("two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL . . . ")
- *Uniloc 2017, LLC v. Kik Interactive, Inc.*, Case No. 2:19-cv-150-JRG-RSP (E.D. Tex.)(Aug. 11, 2020)( ("two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL . . . ")
- *Uniloc 2017, LLC v. Riot Games, Inc.*, Case No. 2:19-cv-223-JRG (E.D. Tex.)(Mar. 19, 2020)(two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL . . . ")
- *Pass & Seymour, Inc. v. General Protecht Group, Inc. et al.*, Case No. 5:077-cv-833 (N.D. N.Y.)(Dec. 21, 2011)("for a period of eighteen months (18) months from his or her last review of such information.")
- *Prism Technologies v. Research in Motion, Ltd el al*, Case No. 8:08-cv-537 (D. Neb)(Feb. 9, 2010)("two years (for examination prosecution and support) after that person's last review of the designated information . . . ").
- *WM Wrigley Jr. Co, v. Cadbury Adams USA*, Case No. 2:04-cv-346 (N.D. Ill.)(Jan. 21, 2005)("three years after that person's last review of the designated information . . .")
- *Vest Corporation v. Amdocs Management Limited et al.*, Case No. 3:14-cv-1142 (D. Ore.)(Feb. 21, 2017)("two years after the person last reviews the source code . . . ").

Like its other objections, ZTE has provided no reason why such language is unacceptable – other than it not being in the Sample Protective Order. If ZTE's language were adopted, an attorney who accessed material early in a case, but moved on from a firm (an withdrew), would be barred for years to come while a case went to trial and worked its way through one or multiple appeals process. The language used in multiple cases as identified above is a reasonable alternative to expiration of a prosecution bar.

## 6.  Retaining Information Required by Law – Section 23

WSOU also proposed a non-controversial clause whereby a party need not destroy information that is required by law to be retained. Again, ZTE has provided no problems with such a proposal– other than it is not in the Court's Sample Protective Order.

**TO THE HONORABLE COURT:**

ZTE Defendants, on May 4, 2021, now move for entry of a disputed Protective Order with this Amended motion for entry of the disputed Protective Order—thereby providing *both* parties' positions. Contrary to its self-identified "Joint Motion" filing, plaintiff WSOU unilaterally moved for entry of its Protective Order on April 29, 2021, *see* Dkt. No. 73, without ZTE Defendants' respective positions and without ZTE Defendants' confirmation or permission. WSOU's filing was premature and significant portions of these disputes could have been avoided if WSOU properly provided its positions beforehand—in fact, many of WSOU's positions were first disclosed to ZTE Defendants in the unilateral filing itself (and after consideration are agreeable).

As a preliminary matter, despite the Court ordering that WSOU engage in a meet-and-confer on these issues, WSOU withheld its rationales for its proposed deviations from the default Protective Order and insisted that ZTE Defendants accept the "WSOU-Microsoft" language that *predates* the Court's default Protective Order. In fact, during the April 21, 2021 meet-and-confer, WSOU refused to provide its rationales presented to this Court on April 29, 2021, Dkt. 73, and further refused to provide them thereafter leading up to the April 29th filing. In contrast, ZTE Defendants continued to request the default Protective Order language because of the conferred protections for the Protected Materials.

ZTE Defendants submit their respective positions herein and respectfully request entry of their proposed Protective Order for the remaining disputes. For every remaining dispute ZTE Defendants propose the default Protective Order language, whereas in contrast, WSOU seeks to strip away confidentiality protections for the Protected Materials with its proposed deviations from the default language.

The purpose of the proposed Protective Order is to limit disclosure under Rule 26(c) by protecting the producing party's confidential information. With respect to either producing party, it is "precisely the purpose and function of a protective order to protect confidential information." *Truswal Systems Corp. v. Hydro-Aire Engineering, Inc.,* 813 F.2d 1207 (Fed. Cir. 1987). And while the Court has the "responsibility and power to fashion an order *balancing the parties' interests*," it should error on the side of caution and favor protections for the producing party's confidential information. *See Heat and Control, Inc. v. Hester Industries, Inc.,* 785 F.2d 1017, 1025 (Fed. Cir. 1986) (emphasis added). Thus, the entered Protective Order should generally favor protections for *either* producing party's Designated/Protected Material.

Here, every remaining disputed issue revolves around the conferred protections the default language affords the producing party's Protected Materials. On the one hand, WSOU seeks to strip away these default protections while ZTE Defendants seek to maintain these default minimums. It is once again noted that ZTE Defendants *seek the default Protective Order* language for every disputed issue (and WSOU does not). As one such example, for Section 5(a), WSOU seeks to expand the scope of "outside counsel" to include "counsel retained for the purpose of this litigation." WSOU's proposed language lacks reasonable limits when read in its entirety and permits disclosure of the Protected Materials (*see* Sections 9-10) to an undisclosed amount and an unidentified group of individuals. The "retained" clause further includes ambiguous terms such as "the purpose" and this "litigation" (ambiguous when viewed in comparison to the defined term "Action"). The retained counsel is not even limited to the Parties in this Action—thereby permitting disclosure to a set of individuals not even retained by the Parties (i.e. completely unaware to the producing party). And, when viewed for every subsequent issue, this ambiguous "outside counsel" definition reads onto every issue and thereby exponentially expands the scope

of disclosures—further stripping the afforded protections to the Protected Materials. As such, and discussed further below, ZTE Defendants seek the default Protective Order language.

As a preliminary matter, contrary to WSOU's allegation that it "sought to avoid a dispute and Court involvement," for every dispute, WSOU proposes language that deviates from this Court's default Protective Order. It is irrelevant whether other parties agreed to different language *before* this Court issued its default Protective Order. Rather, what is relevant is that WSOU continued to propose language that drastically deviated from the default language—thereby *creating* this dispute which is ripe for Court involvement. Further, despite the Court ordering that WSOU engage in a meet-and-confer on these issues, WSOU withheld its rationales for its proposed deviations from the default Protective Order. In fact, WSOU refused to provide its rationales presented to this Court on April 29, 2021, Dkt. 73, during the April 21, 2021 meet-and-confer, and further refused to provide them thereafter. In contrast, ZTE Defendants continued to request the default Protective Order language because of the conferred protections for the Protected Materials.

## ZTE Defendants' Position

### 1. WSOU's Proposed Changes to Sections 5(a-b): Scope of "Outside Counsel"

As addressed above, ZTE Defendants' primary concern with WSOU's proposed deviations throughout lie primarily with the changes to Section 5(a). WSOU proposes expanding "outside counsel" to further include "outside counsel retained for the purpose of this litigation." The plain language of WSOU's deviations create unnecessary ambiguities (at best), and unwarranted disclosure expansions (at worst). The plain reading of WSOU's proposed changes further trickle-down to every subsequent issue discussed below thus underscoring the importance of the Court's default language for Section 5(a).

First, the plain language of WSOU's proposed deviations to Section 5(a) fail to limit the expansion of "outside counsel" to outside counsel retained *by the Parties*. Without such a limit to

the Parties in this Action, the scope of "outside counsel" impermissibly expands to include any unnamed entity that may have a controlling interest in WSOU—and which ZTE Defendants are unaware of. Additionally, without limiting the "outside counsel" to counsel retained by the Parties, any third-party counsel retained may be impermissibly read into Section 5(a), rather than addressed by the specific sections for third-parties. As such, especially for the third-party sections, WSOU's proposed deviations to Section 5(a) render several subsequent sections surplus or nonsensical.

Second, the plain language of WSOU's proposed deviations to Section 5(a) are ambiguous and fail to offer definitions for "the purpose" or "this litigation." Given WSOU's insistence on addressing other term definitions (discussed below), it is shocking the little care WSOU places on this critical clause. The term "this litigation" is ambiguous—especially in view of the already-defined "this Action" term. In fact, every use of this "litigation" in the disputed Protective Order, *see* Dkt. 73, Ex. A, is further clarified and limited to "litigation of this Action," yet WSOU's proposed language fails to make this distinction. Moreover, the term "the purpose" is ambiguous and fails to offer any reasonable limitation to what actual purposes a counsel may be retained for and permitted to view Protected Materials. These issues are compounded by WSOU's insistence to clarify Section 5(b) with strawman arguments propped up by its unreasonable interpretations of "employees of such counsel assigned to and reasonably necessary to assist." WSOU offers no example where Parties ran afoul with its unreasonable hypothetical where the employee of the firm was not permitted to view Protected Materials because they are an employee of the *firm* and not necessarily an employee of the *counsel of record*. As such, when read in view of WSOU's proposed Protective Order, WSOU's proposed edits to Section 5(a-b) are ambiguous and thus improperly expand the scope of "outside counsel."

Third, WSOU already described reasonable means for permissibly disclosing Protected Materials to counsel not of record in this Action for the Parties (i.e. unannounced counsel), through party cooperation or Court order. Again, rather than permitting near-limitless disclosure of Protected Materials, it is better to error on the side of caution by limiting disclosure of Protected Materials and requiring parties seek permission from the disclosing party or leave from the Court.

As such, ZTE Defendants seek the Court's default Protective Order language for "outside counsel" to be limited to just "outside counsel of record for this Action for the Parties," as defined by the default Sections 5(a-b).

**2.   WSOU's Proposed Changes to Section 5(e): Outside Consultant Dispute and Notice**

For this issue, ZTE Defendants' concern rests with WSOU's last proposed deviation to the default language for 5(e). The default Protective Order language states that, in the event of questionable disclosure to outside consultants or experts, "*[n]o disclosure shall occur* until all such objections are resolved by agreement or Court order." (Emphasis added). But, WSOU seeks to effectively eliminate this clause all together by adding ". . . or the time period for objection has expired." The receiving party of Protected Material should error on the side of caution, and no disclosure of Protected Material to outside consultants/experts shall occur until all issues are resolved with respect to the given outside consultant/expert.

The default Protective Order protects the producing party's Protected Materials and does not waive the "no disclosure" clause if an objection is not made within WSOU's proposed *reduced* timeline. It is well understood that ZTE Defendants' personnel expand across multiple time zones—from East Coast U.S. to China. Thus, ZTE Defendants' communication across these time zones requires additional time that WSOU's proposed deviations do not account for—in many instances, WSOU cuts the notice time by half. The Protective Order should not enable the *effective waiver* of objections while Parties analyze outside consultant/experts, and further internally

discuss. Further, the Protective Order should not reduce these default notice and objection time period by half (thereby significantly disadvantaging ZTE Defendants).

Thus, ZTE Defendants insist on the default Protective Order language for Section 5(e) and request that this Court reject WSOU's proposed (1) reduction of the notice period for objections, (2) reduction of the negotiation period for resolving objections, and (3) elimination of the "no disclosure" clause.

### 3. WSOU's Proposed Changes to Section 8: Definition of Source Code Material

The Court already defines "Source Code Material" in its default Protective Order Section 8. WSOU's argument for changing the Court's default definition is because "non-source code [may] be characterized as source code," and WSOU is therefore concerned of heightened protections provided to non-source code material. But this is nonsensical and counter to the purpose of the Protective Order. Again, it is better for the parties to error on the side of caution by providing protections to Protected Materials—even if they are incorrectly identified as "Source Code Material," rather than stripping them of the default protections. In the event that a receiving party believes source code is incorrectly identified as source code, then it is safer for the parties to resolve it (or for Court involvement), rather than automatically permitting disclosure/transmission under a lower confidentiality designation.

### 4. WSOU's Proposed Changes to Sections 11(a), (h), & (k): Source Code Handling

Yet again, ZTE Defendants seek the default Protective Order language for Section 11. The Court—as sophisticated as WSOU and Microsoft—already considered the WSOU-Microsoft Protective Order language, but elected to exclude it from its default Protective Order. In fact, WSOU's proposed deviations favor the *convenience* of the receiving party rather than erroring on the side of *caution* for the producing party.

### c) Stand-Alone Computer(s) – Section 11(a)

WSOU misstates the language of the undisputed Protective Order, *see* Dkt. 73, Ex. A. The parties are negotiating one Protective Order for all eleven cases (i.e. the agreed "this Action"), and not eleven separate Protective Orders applied individually to each case. Thus, one computer for *each* case is unnecessary. Neither party contests this understanding of "this Action," and as such, there is no need to change the default Protective Order language with respect to the "stand-alone computer(s)" language.

### d) Handling of Source Code Material & Stand-Along Computer(s) – Sections 11(a) & (k)

As for transportation and location of the stand-along computer(s), ZTE Defendants (via its counsel) prefer to remain in control of the Source Code and stand-alone computer(s) in order to sufficiently monitor the security of the stand-along computer(s). As such, the default Protective Order language is appropriate here and there is no need to produce the stand-along computer(s) out of ZTE Defendants' counsel offices.

With respect to WSOU's request for language addressing concerns for COVID-19, the Court's default Protective Order issued on March 31, 2021, and the Court was presumably aware of potential health concerns. Yet, the Court elected to refrain from including such language WSOU now proposes—likely because the Parties can meet-and-confer in such event and surplus language is unnecessary. Again, there is no need to include surplus language, as WSOU proposes, that strips away protections from the Protected Materials.

Lastly, for Section 11(k), ZTE Defendants propose language from the Eastern District of Texas default protective order clarifying that "Source Code Material may only be transported electronically for the purpose of Court *proceeding(s) or deposition(s)* . . . and is at all times subject to the transport restrictions set forth herein." (Emphasis added). WSOU, however, alleges that ZTE

Defendants' proposed language "ensures the inability to reference Source Code Material at such a remote deposition or at a hearing – via Zoom or otherwise." WSOU's allegation is incorrect. The plain meaning of ZTE Defendants' proposed language does not prevent such references to Source Code Material during Zoom (or otherwise) proceedings—in fact, ZTE Defendants' language specifically states "Court proceeding(s) or deposition(s)" are permitted. WSOU's objection here is nonsensical.

### 5. Remaining Surplus Language Proposed by WSOU[7]

Again, there is no need to include surplus language, as WSOU proposes, that strips away protections from the Protected Materials. The Court already considered WSOU's previous WSOU-Microsoft language and elected to omit it from the default Protective Order. Nevertheless, for the purposes of minimizing disputes for this Court, ZTE Defendants maintain that the default Protective Order language for these remaining sections is sufficient, but ZTE Defendants do not object to WSOU's proposed language.

### Conclusion

It is once again noted that ZTE Defendants *seek the default Protective Order* language for every disputed issue (and WSOU does not).

---

[7] The remaining language proposed by WSOU includes Section 11(a) with respect to the minimum display, the analysis tools, and footnote 3; Section 11(h) with respect to printout pages; Section 12 regarding prosecution bar; and Section 23 regarding retained information.

DATED:  May 4, 2021                          Respectfully submitted,

                                             /s/Lionel M. Lavenue
                                             Lionel M. Lavenue
                                             Virginia Bar No. 49,005
                                             lionel.lavenue@finnegan.com
                                             **FINNEGAN,   HENDERSON,   FARABOW,**
                                             **GARRETT & DUNNER, LLP**
                                             1875 Explorer Street, Suite 800
                                             Reston, VA 20190
                                             Phone:  (571) 203-2700
                                             Fax:     (202) 408-4400


                                             **ATTORNEY FOR DEFENDANTS**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on May 4, 2021.

*/s/Lionel M. Lavenue*
Lionel M. Lavenue