**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **WSOU INVESTMENTS LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT**, | C.A. NO. 6:20-cv-00487-ADA |
| | C.A. NO. 6:20-cv-00488-ADA |
| *Plaintiff*, | C.A. NO. 6:20-cv-00494-ADA |
| | C.A. NO. 6:20-cv-00496-ADA |
| v. | |
| **ZTE CORPORATION, ZTE (USA) INC. AND ZTE (TX), INC.**, | |
| *Defendants*. | |

**<u>DEFENDANTS' SUR-REPLY CLAIM CONSTRUCTION BRIEF</u>**

## <u>TABLE OF CONTENTS</u>

I.      U.S. PATENT NO. 7,489,929 (CASE NO. 6:20-CV-00488-ADA) ....................................1

        A.      Term 1: "buffering bearer traffic" (Claim 11) .........................................................1

                1.      WSOU's Argument That ZTE Redefines "Buffering' Is Incorrect. ............1

                2.      WSOU's Arguments Regarding Intrinsic And Extrinsic Evidence
                        Are Incorrect. .................................................................................................2

        B.      Terms 2-3: "characteristic" and "replacement hysteresis" (Claim 14)....................3

II.     U.S. PATENT NO. 7,742,534 (CASE NO. 6:20-CV-00496-ADA) ....................................4

        A.      Term 1: "maximal number of sub-carriers" (Claims 4 and 7) .................................4

        B.      Term 2: "means for selecting" / "means for determining" (Claim 6)......................6

                1.      WSOU's Arguments Regarding The First "Means For Selecting"
                        And The Second "Means For Selecting" Are Incorrect................................7

                2.      WSOU's Fails To Identify Structure For The Identified "Means
                        For Selecting." ...............................................................................................7

                3.      The Claimed Transmitter Does Not Connote Structure.................................9

                4.      "Means For Determining" (Claim 6) .............................................................9

        C.      Term 3: "quality level" / "as a function of" (Claims 1, 2, 3, 5-9, 13, 16-18) ........10

III.    U.S. PATENT NO. 8,451,839 (CASE NO. 6:20-CV-00487-ADA) ................................10

        A.      Term 1: "route" / "route-related information" (Claims 1, 3, 6, 8, and 11) ............10

        B.      Term 2: "said predefined using time indicates[ing] a [the] using time of
                said route" (Claims 1 and 6) ...................................................................................12

        C.      Term 3: "using time" (Claims 1, 6) ........................................................................13

IV.     U.S. PATENT NO. 9,185,036 (CASE NO. 6:20-CV-00494-ADA) ................................13

        A.      Term 1: "data flow" (Claims 1, 6,-10, 12, 17-21, and 23-24) ...............................13

        B.      Term 2: "congestion condition . . ." (Claims 1, 12, 23, and 24)............................14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
No. 11-1147, (Fed. Cir. 2012)....................................................................................8

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018).............................................................................5, 6

*Cellular Comms. Equip. LLC, v. Samsung Elec. Co. Ltd., et al.*,
No. 6:14-CV-759, Markman Order (Dkt. 206) (E.D. Tex. March 29, 2016) ...........9

*CIF Licensing, LLC, d/b/a/ GE Licensing, v. Agere Systems, Inc.*,
No. 07-170-JJF, Markman Order (D. Del. July 10, 2008)........................................9

*Dayco Prod., Inc. v. Total Containment, Inc.*,
258 F.3d 1317 (Fed. Cir. 2001)................................................................................2

*Ecolab Inc. v. Paraclipse, Inc.*,
285 F.3d 1362, 1375 (Fed. Cir. 2002)....................................................................10

*Halliburton Energy Servs. V. M-I LLC*,
514 F.3d 1244 (Fed. Cir. 2008)................................................................................9

*Nautilus Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014)...............................................................................................2, 4

*Novo Indus., L.P. v. Micro Molds Corp.*,
350 F.3d 1348 (Fed. Cir. 2003)................................................................................4

*Pause Technology, LLC v. TiVo, Inc.*,
419 F.3d 1326 (Fed. Cir. 2005) .........................................................................12, 15

*Sitrick v. Dreamworks, LLC*,
516 F.3d 993 (Fed. Cir. 2008)..................................................................................2

*SunRace Roots Enterprise Co., Ltd. v. SRAM Corp.*,
336 F.3d 1298, 1303 (Fed. Cir. 2003).....................................................................10

*Warner-Lambert Co. v. Apotex Corp.*,

316 F.3d 1348 (Fed. Cir. 2003) ..............................................................................13

*V-Formation, Inc. v. Benetton Group SpA*,
401 F.3d (Fed. Cir. 2005)..........................................................................................2

**Statutes**

35 U.S.C. § 112(1) ............................................................................................................... 2

35 U.S.C. § 112(2) ............................................................................................................... 2

35 U.S.C. § 112(6) ............................................................................................................... 2

35 U.S.C. § 112(a) ......................................................................................................... 2, 29

35 U.S.C. § 112(b) ....................................................................................................... *passim*

35 U.S.C. § 112(f) ........................................................................................................ *passim*

35 U.S.C. § 112, ¶ 1 ............................................................................................................. 3

35 U.S.C. § 112, ¶ 2 ............................................................................................. 3, 17, 25

35 U.S.C. § 112, ¶ 6 ......................................................................................... 15, 16, 19

Patent Act ............................................................................................................................ 3

**Other Authorities**

Wiley-IEEE Electrical and Electronics Engineering Disctionary, p. 84 (2004) (Ex.
7) ....................................................................................................................................... 7

I.      **U.S. Patent No. 7,489,929 (Case No. 6:20-cv-00488-ADA)**

A.      **Term 1: "buffering bearer traffic" (Claim 11)**

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "During a handoff process, all data from the mobile station is buffered at the mobile station or all data at the network side is buffered at the network side until the handoff process is complete." |

1.      **WSOU's Argument That ZTE Redefines "Buffering' Is Incorrect.**

Contrary to WSOU's allegations, WSOU Reply Br., p. 1, ZTE did not admit that ZTE's proposed construction redefines the term "buffering." Rather, ZTE explained that the meaning of the term "buffering" itself specifically requires to qualify *where* to buffer and *how long* to buffer.

First, the term "buffering" itself requires location and duration. As explained in ZTE Defendants' Opening Br., p. 7, it is well-known in the art that "buffering" is an operation of *temporarily storing data* being sent or received. The temporality aspect of the term "buffering" requires qualification of *how long* to buffer, and the duration of buffering is important because it affects the configuration and performance of the system, and thus, directly affects the scope of the claims. *Id*. pp. 7-8.

The data storage aspect of the term "buffer" requires to qualify *where* to store. Such qualification is important because there are different options in terms of location to store, and the different buffering options require different hardware and/or software configuration, and thus directly affects the scope of the claims. *Id*. p. 7. Therefore, without specifically qualifying the duration and location for buffering, the claim fails to inform those skilled in the art about the scope of the invention with reasonable certainty.

Second, WSOU fails to rebut that location and duration are important for the scope of the claim. Rather, WSOU alleges that ZTE seeks to add "extraneous limitations" that are

"unambiguously required."[1] WSOU Reply Br., p. 1. But, as explained above, without the understanding proposed by ZTE Defendants for this term, the term is indefinite.

### 2.  WSOU's Arguments Regarding Intrinsic And Extrinsic Evidence Are Incorrect.

WSOU asserts that "[f]aced with no *intrinsic* evidence to satisfy ZTE's burden, ZTE points out to *extrinsic* evidence. . ." WSOU Reply Br., p. 1 (emphasis original). WSOU is incorrect.

First, Defendants' proposed claim construction is fully supported by intrinsic evidence. ZTE Defendants referenced the specification. Defendants' Opening Br., p. 8.

Second, WSOU's argument that ZTE waived reliance on extrinsic evidence is incorrect. WSOU misstated Defendants' argument—the reference to extrinsic evidence supported a POSITA's understanding of the intrinsic evidence. For instance, the '929 patent specification describes that the user data is "buffered is during the handoff process," and is buffered "until the handoff process is complete." As evident by the "buffering" dictionary discussion, a POSITA would have understood that the duration of handoff is short and less than one second. Therefore, it is clear to POSITA buffering is an operation of *temporarily* storing data being sent or received.

Third, WSOU attempts to expand the scope of the claim without boundary and argues that the buffer traffic can be stored *anywhere* in the universe. WSOU Reply Br., p. 2. The '929 patent specification, however, limits buffering to "***at the mobile station***" and "at the ***network side***." The '929 patent, 6:34-39 (emphasis added). This is only portion of the '929 patent specification describing the "buffering." Courts[2] rejected such improper expansion of the scope of the claims.

---

[1] WSOU's reliance on *Dayco Prod., Inc. v. Total Containment, Inc*., 258 F.3d 1317, 1327 (Fed. Cir. 2001), WSOU Reply Br., p. 1, is fatal. Unlike *Dayco,* here, the claim explicitly recites the term "buffering" which is an operation of *temporarily* storing data being sent or received.

[2] *See Nautilus*, at 901 (2014); *see also Sitrick*, at 999 (Fed. Cir. 2008); *V-Formation*, at 1310 (Fed. Cir. 2005).

Fourth, WSOU's allegations that Defendants' proposed claim construction is inconsistent is incorrect. WSOU asserts that "ZTE's *unrecited* "until . . ." qualification is precluded by, and inconsistent with, the *recited* "while" qualification." WSOU Reply Br., p. 2 (emphasis original). The Defendants use the term "while" in a general sense of duration, and the term "until" more specifies the end of the duration. Therefore, contrary to WSOU's assertion, the "until . . ." qualification is not precluded by, or inconsistent with, the "while" qualification.

Fifth, WSOU's arguments regarding the specification and "all data" are unpersuasive. WSOU argues that "there is no need to interpret "all data," in the context of that non-limiting description of an example embodiment." WSOU Reply Br., p. 3. WSOU is incorrect. The issue here is not whether the relied portion of the specification is limiting or non-limiting example. The issue here is that WSOU's arguments contradict the clear language of the specification. For instance, the lexicographers of the specification stated that "**all user data** for a mobile station involved in the example handoff process **is buffered during the handoff process.**" The '929 patent, 6:34-39. In contrast, WSOU argued that the ""all data" is not necessarily buffered" because some of the "all data" needs to be transmitted. *See* Defendants' Opening Br., pp. 8-9. As mentioned above, the above cited portion (6:34-39) is the only portion in the '929 patent specification describing the "buffering," and yet, WSOU's arguments contradict it. WSOU Reply Br., p. 3.

**B.   Terms 2-3: "characteristic" and "replacement hysteresis" (Claim 14)**

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "Indefinite under 35 U.S.C. § 112(b)." |

First, WSOU's argument that Defendants offer no evidentiary basis for indefiniteness is incorrect. With respect to the term "characteristic," as mentioned in Defendants Opening Br., pp. 13-14, the specification fails to mention the term. And the plain and ordinary meaning of the term is extremely broad, so the untethered term is indefinite. *See* Defendants' Opening Br., pp. 13-14;

*see also Nautilus* at 901. Similarly, the '929 patent fails to define the "replacement hysteresis."

Second, WSOU's argument regarding the "pilot signal strength" is unpersuasive. WSOU alleges that "ZTE failed to substantively address, as exemplary disclosure also pertaining to the "characteristic" term. Dkt. 61 at 7 (citing '929 patent, 2:59-3:2)," and that the Defendants are "ignoring the intrinsic evidence." WSOU Reply Br., p. 4. WSOU is incorrect.

In its Opening Br., WSOU merely stated that "WSOU submits that at least the following description of an example embodiment is relevant to the disputed terms," and copied and pasted the entire paragraph from Column 2, line 59 to Column 3, line 2. WSOU did not explain how the paragraph is relevant to the disputed terms and did not point out which term in the paragraph is the "characteristic." As such, the term is "not amenable to construction" without a speculation or a blind guessing, and thus the term is indefinite. *See Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1353 (Fed. Cir. 2003).

In its Reply Br., WSOU alleges that "[t]he cited passage discloses "pilot signal strength" as an example of the "characteristic" term." WSOU Reply Br., p. 4. However, this allegation still does not help to determine the scope of the claim because WSOU merely said "pilot signal strength" is an example of the "characteristic"—even though the specification does not make this connection. WSOU fails to clarify how the specification provides such an example. Without such clarification, as mentioned above, the plain and ordinary meaning of the term "characteristic" is extremely broad and there is no way to determine the scope of the claim.

## II.     U.S. Patent No. 7,742,534 (Case No. 6:20-cv-00496-ADA)

### A.     Term 1: "maximal number of sub-carriers" (Claims 4 and 7)

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "Indefinite under 35 U.S.C. § 112(b)." |

WSOU alleges that "ZTE makes no distinction between the words "maximal" and "maximum" (as recited in claims 4 and 7, respectively)—WSOU's argument is unpersuasive. WSOU Reply Br., p. 4. WSOU merely makes the above conclusory assertion without providing what the distinction, if any, between the term "maximal" and the term "maximum" is in the context of alleged invention. In fact, the '534 patent itself treats the two terms as identical terms. In particular, claim 4 recites "<u>maximal</u> number of sub-carriers," and claim 7 recites "<u>maximum</u> number of sub-carriers." Therefore, WSOU's arguments are not persuasive—and rather demonstrate the indefiniteness of these claims.

Additionally, WSOU argues that "maximal" is not a term of degree because it may be associated with numbers—WSOU's argument here is also unpersuasive. WSOU Reply Br., p. 5.

First, WSOU argues that the specification provides description of a numerical "maximal." The '534 patent, 4:11-14; *see also* WSOU Reply Br., p. 5. Most fatally, however, the provided portion of the specification does not mention the term "maximal" number of sub-carriers. Indeed, the entire specification does not mention the "maximal" or "maximum" number of sub-carriers.

Second, the issue is not whether the term "maximal" is a term of degree because it *is* or *is not* associated with numerical values (e.g., percentages are still terms of degrees), rather, the issue is whether the term has limits. For instance, claim 4 does not provide metes and bounds to the claim because the claim does not specify how the "threshold" and the "maximal number" of sub-carriers are related or how the "maximal number" of sub-carriers are determined.

Third, WSOU further alleges that "[t]he authority ZTE cites is inapposite." WSOU Reply Br., p. 5. WSOU is incorrect. Here, *Berkheimer*[3] applies as discussed in ZTE Defendants' Opening

---

[3] WSOU further alleges that *Berkheimer* is distinguishable because it relied heavily on expert testimony. WSOU Reply Br., p. 6. WSOU is incorrect. In *Berkheimer*, the Federal Circuit affirmed the district court's holding that the term "minimal redundancy" was indefinite as a term of degree because the specification lacked objective boundaries or

Br., p. 15. And, as discussed above, without reciting how the threshold is related to a maximal number of sub-carriers, it is unclear what is the "maximal number" and how the "maximal number" is determined. Thus, the term is insolubly ambiguous, rendering the phrase indefinite.

### B.    Term 2: "means for selecting" / "means for determining" (Claim 6)

| WSOU's Proposed Construction | Defendants' Proposed Construction for "means for selecting" |
|---|---|
| Governed by 35 U.S.C. § 112(f)<br>Function: selecting a set of sub-carriers from the plurality of sub-carriers on which user data is to be communicated from a transmitter to a receiver | |
| Structure: transmitter configured to perform corresponding operation(s), such as, (i) receive quality levels from receiver, (ii) transmit threshold indication to receiver, (iii) select the set of sub-carriers based at least in part on either the received quality level or the transmitted threshold indication (or both). | Structure: none disclosed.<br>Indefinite under 35 U.S.C. § 112(b) |
| **WSOU's Proposed Construction** | **Defendants' Proposed Construction for "means for determining"** |
| Governed by 35 U.S.C. § 112(f)<br>Function: determining quality levels for sub-carriers | |
| Structure: receiver configured to perform corresponding operation(s), such as measure the SIR for sub carriers (see, e.g., 5:19-24). | Structure: none disclosed.<br>Indefinite under 35 U.S.C. § 112(b) |

In its Opening Br., WSOU argued that the terms "means for selecting" and "means for determining" are not governed by § 112, ¶6. WSOU Opening Br., pp. 9-10. In fact, in order to avoid the Court's reduction of asserted claims, and to avoid acknowledging the need for construction of *nine* additional terms, WSOU further refused to acknowledge that these terms are governed by § 112, ¶6. *See* ZTE Defendants' Opening Br., Ex. 6. Now, in its Reply Br., WSOU admits that the term "means-for-selecting" should be construed as means-plus-function under § 112, ¶6. WSOU Reply Br., p. 6. Due to WSOU's improper conduction, it has waived any objections here with regards to construing these terms.

---

examples of what constitutes "minimal". *See Berkheimer v. HP Inc.,* 881 F.3d 1360, 1363-64 (Fed. Cir. 2018).  Like *Berkheimer*, the '534 patent specification lacks objective boundaries or examples of what constitutes "maximal."

Nevertheless, WSOU unilaterally separated the term "means for determining" from the "means for selecting". WSOU Reply Br., p. 8. As mentioned in Defendants' Opening Br., the "means for determining" and the "means for selecting" are at the same position, and they should not be counted as two independent claims.

Additionally, in its Reply Br., WSOU improperly changed the alleged structure of the "means-for-selecting" from "receiver" to "transmitter . . .," and thus has further waived its argument for this term. WSOU Reply Br., p. 6. Nevertheless, regardless of whether WSOU pointed to "receiver" or "transmitter," the specification fails to provide any structure corresponding to the "means for selecting," as discussed below.

### 1. WSOU's Arguments Regarding The First "Means For Selecting" And The Second "Means For Selecting" Are Incorrect.

WSOU feigns confusion—for the first time in its Reply Br.—that it was unaware of which "means for selecting" term was identified for construction. WSOU Reply Br., p. 6. There was never confusion because ZTE Defendants identified the *first* "means for selecting" term for construction. In fact, in its Opening Br., WSOU acknowledged this fact and that the proposed function of the term "means for selecting" is "selecting a set of sub-carriers from the plurality of sub-carriers on which user data is to be communicated from a transmitter to a receiver," that is, the alleged *first* "means for selecting" claim language. WSOU Opening Br., p. 9.

### 2. WSOU's Fails To Identify Structure For The Identified "Means For Selecting."

As mentioned above, the inquiry here is whether *any* of "means for selecting" has a corresponding structure. None do. Indeed, the specification does not disclose any corresponding structure that performs the cited function of the first (or second) "means for selecting," as discussed below, and WSOU's estranged argument regarding unidentified qualifiers as structure is further

erroneous. In its Reply Br., WSOU argues that the structure of the "means for selecting" is the "transmitter . . ." WSOU Reply Br., pp. 6-8. WSOU is incorrect for the following reasons.[4]

First, the claim recites "an apparatus", "a transmitter" and "a receiver" as three independent elements. The claim also recites that "the apparatus comprising: means for selecting." While the claim clearly recites that the "means for selecting" is included in the "apparatus," WSOU alleges that the "means for selecting" is the transmitter (and originally alleged receiver), without providing any reasoning to reconcile these contradictions. Therefore, WSOU is incorrect.

Second, the term "configured to" is well-known functional language.[5] Thus, the "transmitter <u>configured to perform</u> . . ." is entirely circular. As a cart before horse, WSOU merely lists the function (i.e., receiving, transmitting, selecting) that the transmitter allegedly performs, but fails to identify the structure. Therefore, WSOU is incorrect.

Third, WSOU argues that "the "selecting" qualifiers themselves recite <u>algorithmic structure</u> for the transmitter by reciting limitations. WSOU Reply Br., p. 7 (emphasis added). In fact, WSOU is fabricating structure untethered from the specification. Nowhere does the specification describe an "algorithmic structure." Therefore, WSOU is incorrect.

Fourth, WSOU provides some portions of the '534 patent specification but none of them describes a structure corresponding to the recited function. WSOU Reply Br., pp. 7-8. All the portions cited by WSOU are functional. None of the portions cited by WSOU describe structure performing the function. Therefore, WSOU fails to identify any structure.

Fifth, WSOU also argues that the unidentified "selecting" language acts as structural WSOU Reply Br., p. 7 (emphases original). WSOU is incorrect. A functional term cannot become

---

[4] Although not relevant for this construction, WSOU also fails to identify structure for the second "means for selecting." *See* ZTE Defendants' Opening Br., pp. 15-19.
[5] *See*, e.g., *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc*., No. 11-1147 (Fed. Cir. 2012).

a structural term by itself just because no party included it in the proposed function/structure. There is no presumption that a claim term is structural. Therefore, WSOU's arguments are incorrect.

### 3.    The Claimed Transmitter Does Not Connote Structure.

The "transmitter" here is not a generic, well-known transmitter in cellular radio communication. Rather, the "transmitter" here is the very element of the alleged invention, and the claimed "means for selecting" are the key components of the "transmitter." *See* the '534 patent, 5:36-37. And yet, the '534 patent specification fails to provide structure of the claimed "transmitter." A POSITA would not even understand the claimed "means for selecting" are hardware or software. As such, the claims defeat "the public notice function of patent claims." *Halliburton Energy Servs. V. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008).

### 4.    "Means For Determining" (Claim 6)

In its Reply Br., WSOU finally admits that the term "means for determining" should be construed as means-plus-function under § 112, ¶6. WSOU Reply Br., p. 8. However, WSOU argues that the "receiver configured to perform corresponding operation(s), such as measure the SIR for sub carriers (see, e.g., 5:19-24)" is the structure corresponding to the "means for determining." WSOU Reply Br., p. 8. WSOU is incorrect. First, WSOU just now in its Reply Br., first raises this proposed structure. As such, WSOU waived such argument. Second, regardless, WSOU's new structure is merely functional, and not structural.[6] It does not provide any corresponding structure that performs the described function. Indeed, the specification fails to

---

[6] WSOU further assets that courts have found that "receiver," or a "mobile terminal" having receiver functionality, connote definite structure. WSOU's Reply Br., p. 9. WSOU is incorrect. Both *CIF Licensing* and *Cellular* do not apply here. Unlike *CIF Licensing*, the '534 patent specification fails to provide any corresponding structure that performs the function of the claimed "means for determining." Unlike *Cellular*, the function of the term "means for determining" is not function that generic mobile terminal receiver performs. It must have hardware and/or software specifically configured or programmed to perform the function.

mention the term "means for determining." As such, WSOU is unable to identify any structure, and WSOU's "arguments" are merely baseless assertions.

C.      **Term 3: "quality level" / "as a function of" (Claims 1, 2, 3, 5-9, 13, 16-18)**

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "One of a signal-to-interference ratio, a bit error rate, or a modulation scheme." |

WSOU alleges that ZTE Defendants are impermissibly including an indefiniteness argument. WSOU Reply Br., p. 10. WSOU is incorrect. As clearly mentioned in Defendants' Opening Br. pp. 19-20, Defendants objected to WSOU's improper expansion of the claimed scope.

WSOU also alleges that "ZTE failed to overcome the "especially strong" presumption against "import[ing] virtually the entirety of claim 8, verbatim, into claim 6," as ZTE proposes." WSOU's Reply Br., p. 10. WSOU is incorrect.

First, the "especially strong" presumption mentioned in *SunRace* is "when the limitation in dispute is the only meaningful difference between an **independent** and **dependent** claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim."[7] Here, both WSOU's alleged claims are dependent claims (claims 6 and 8), and thus, the "especially strong" presumption mentioned in *SunRace* does not apply.

Second, Defendants' proposed claim construction is based on the specification (the '534 patent, 3:14-26), which is the only portion in the specification providing description regarding the claimed "quality level." The specification does not provide any other type of quality level.

III.     **U.S. Patent No. 8,451,839 (Case No. 6:20-cv-00487-ADA)**

A.      **Term 1: "route" / "route-related information" (Claims 1, 3, 6, 8, and 11)**

---

[7] *SunRace Roots Enterprise Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003) (citing *Ecolab Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1375 (Fed. Cir. 2002)). (Emphases added).

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite under 35 U.S.C. § 112(b) |

First, WSOU incorrectly argues that this term is definite. WSOU Reply Br., pp. 10-11. For instance, with respect to the term "route," the '839 patent fails to provide defining features regarding the term. And the plain and ordinary meaning of the term cannot be ascertained, as it is untethered by the claims and scope of the patent. *See* Defendants Opening Br., pp. 21-23. WSOU responds by stating that "route appears nearly two-hundred times in the '839 patent." WSOU Reply Br., p. 11. This is misleading. Terms like "route-related information," "route information," "route protocols," "router[s]," "route tables," "route protocol messages," "route management apparatus," "route maintenance means," and "route table item" are used in the '839 patent some two hundred times, but the term "route[s]" is only recited in the specification when "creating routes," '839 patent, Abstract, 1:51-55; 3:14-19, and that the using time is related to a route. *Id.*, 5:13-18.[8] WSOU's hand-waving cannot make the term "route[s]" become somehow equivalent to these hundreds of other terms, both in the claim and in the specification. WSOU has itself cited precedent that different terms have different meanings. *See, e.g.*, WSOU Opening Br., p. 13. Here, the term "routes" is distinct in its use in the claims as well as in the specification, and cannot simply be equated to "route information" or "route tables."

Likewise, the term "route-related information" is indefinite because the claim and the specification merely refer to the "route-related information" as existing, but not what the "route-related information" might be. Because the meaning is not ascertainable, a PHOSITA would be unable to determine the scope of the claims, and the claims are thus indefinite.

Second, WSOU's argument relating to the antecedent basis of "said route" in claims 1 and

---

[8] The term "route" is used in two other sections, but it is clear these section reference "marginal routers" and the term "route" appears to be a reference to these routers. *Compare* '839 patent, 5:47-64; 6:37-54 *with id.*, Figures 3a, 3b.

6 is similarly deficient. WSOU Reply Br., p. 11. The term "said route" cannot have an antecedent basis of "route-related information" because the terms mean something different.[9] WSOU fails to raise an argument that "route" should be defined as "route information," because it is simply nonsensical to read the claims and assume that these different terms should have the same meaning. In claims 1 and 6, there are no limitations or other claim elements that provide a PHOSITA with any guidance as to what "route" is being referred to. A PHOSITA would also not be able to ascertain the meaning from the specification because the specification only recites creating a route. And, the prosecution history sheds no light on the issue. Without this information, it is impossible for a PHOSITA to ascertain the scope of the claims, and the claims are thus indefinite.

**B.    Term 2: "said predefined using time indicates[ing] a [the] using time of said route" (Claims 1 and 6)**

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "Indefinite under 35 U.S.C. § 112(b)." |

First, WSOU incorrectly characterizes ZTE's arguments as one of inoperativeness, WSOU Reply Br., p. 11, but this is untrue. The scope of the claim is not ascertainable because a PHOSITA is not able to determine whether a predefined using time is defined beforehand, or "indicates a using time of said route," as recited in the claims. As such, the claims are indefinite.

Second, WSOU looks to the specification to resolve this ambiguity, concluding that "using time can be predefined before it is used." WSOU Reply Br., p. 12. WSOU does not address the issue that the claim recites that "said predefined using time *indicates* a using time of said route." WSOU's argument does not address what it means for the predefined using time to "indicate" a using time, only "a time that can be used." The former language is not addressed by the specification because it does not appear anywhere in the specification. *See generally*, '839 patent.

---

[9] *Pause Technology, LLC v. TiVo, Inc.*, 419 F.3d 1326, 1334 (Fed. Cir. 2005).

Third, WSOU seeks for the court to read section 5:9-18 of the '839 patent into claims 1 and 6 to resolve any ambiguity. WSOU Reply Br., p. 12.[10] But, WSOU does not suggest a construction. And it would be improper because the Court cannot simply read in elements of an embodiment, even if the elements were known, to resolve the ambiguity of the claims.

Fourth, the specification language does contain differences from the claim language.

C.      Term 3: "using time" (Claims 1, 6)

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Claim 6: Indefinite for lack of antecedent basis under 35 U.S.C. § 112(b) |

ZTE stated in its Opening Br. that the antecedent basis issue may not be fixed in hindsight. WSOU's attempt to differentiate "the" and "said" is pure hindsight and against well-acknowledged rules of patent law.[11] ZTE's argument in its Opening Br. explicitly states the relevant issue is that it is unclear what "using time" is referenced in view of the other claimed "predefined using time." Defendants Opening Br., pp 24-25. None of WSOU's arguments address ZTE's point.

IV.     U.S. Patent No. 9,185,036 (Case No. 6:20-cv-00494-ADA)

A.      Term 1: "data flow" (Claims 1, 6,-10, 12, 17-21, and 23-24)

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite under 35 U.S.C. § 112(b). |

The specification fails to provide a measure for data control, and WSOU fails to address this issue. Defendants Opening Br., pp. 25-26; *see also* WSOU Reply Br., pp. 13-14.

WSOU further erroneously relies on its dependent claims to resolve the indefiniteness issue. This is flawed for two reasons. First, the dependent claims recite additional limitations that

---

[10] WSOU (stating that "one of ordinary skill in the art would recognize, with reasonable certainty, that claim scope encompasses not only S12 of Figure 2, but also the only corresponding written description of S12 (e.g., at 5:9-18).")

[11] *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1356 (Fed. Cir. 2003) (citing a Circuit case that stated "it is a rule of law well established that the definite article "the" particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'").

are not linked to other claim elements, such as "data packets" in claims 7-9 and 18-20 and a new recitation of "a data flow" in claims 6 and 17. WSOU failed to address ZTE's argument that a PHOSITA would be unable to measure or determine whether packets were relevant to the claims or not because of the lack of limitations of the claims. Defendants Opening Br., pp. 25-26. Second, independent claims may be invalid even if dependent claims are not.[12] WSOU's error is that it cannot incorporate portions of dependent claims at will to resolve ambiguities in the independent claim. *See* WSOU Reply Br., pp. 13-14. But, as discussed above, even if this error is committed, it would not resolve the indefiniteness issue here. Resorting to disclosure in dependent claims is exactly why a PHOSITA would be unable to ascertain the meaning of the claims, and, here, the dependent claims fail to resolve the uncertainty.

WSOU also argues that "a MAC address associated with a data flow" provides meaningful context. WSOU Reply Br., p. 14. It does not. This claim term provides no information as to whether the data flow is present at the MAC address, the data flow contains a message of the MAC address, the data flow is to or from the MAC address, whether a MAC address is several hops away, or any other combination of elements. The specification discusses different versions of these elements, *see, e.g.*, 1:54-2:13; 2:34-41, but, it is impossible to determine the scope of the claims without the elements tied to the claims. Accordingly, the specification thus fails to resolve the ambiguity in the claims. To the extent a source node and a destination node need to be read into the claims, WSOU Reply Br., p. 14, WSOU should have supplied an appropriate construction. Without any of the apparently necessary limitations, the claims are ambiguous and indefinite.

   **B.    Term 2: "congestion condition . . ." (Claims 1, 12, 23, and 24)**

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
|  |  |

---

[12] *Default Proof Credit Card System, Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1303 (Fed. Cir. 2005).

| Plain and ordinary meaning | "Indefinite under 35 U.S.C. § 112(b)" |
| --- | --- |

First, WSOU's argument regarding "congestion message" does not apply to the claimed "congestion condition." WSOU points to the specification, arguing that the "congestion message" enables control, WSOU Reply Br., p. 15, but fails to identify any disclosure of the "congestion condition" enabling control. These claims terms are not the same and may not be used interchangeably. *Pause Technology*, 419 F.3d at 1334. How the "congestion condition" enables control, what it means for the "congestion condition" to enable control, or what measure may be used to determine whether control of "data flow in a manner tending to reduce the congestion condition" is occurring, is not present in the claims or the specification. To the extent WSOU proposes that portions of the '036 patent should be read into the specification, WSOU does not explain how claim scope should be changed to incorporate the cited paragraphs of the specification. *See* WSOU Reply Br., p. 15.

Second, WSOU's argument regarding dependent claims are again incorrect. WSOU brings a theory that dependent claims may be read into independent claims to inform the scope of the independent claims. *See* WSOU Reply Br., p. 15. This is error, and independent claims may be invalid even if  dependent claims are not. *Default*, 412 F.3d at 1303 (Fed. Cir. 2005). And, WSOU's theory regarding the dependent claims is flawed because the dependent claims do not recite qualifications that would allow a PHOSITA to ascertain the scope of controlling "data flow in a manner tending to reduce the congestion condition." Nothing in the limitations of claims 2-5 and 13-16 would provide a PHOSITA a measure of whether a congestion condition is tending to be reduced or not. Additionally, the limitations and features of claims 2-5 and 13-16 and in the specification at 4:35-42, include limitations like links and queues that are not included in the independent claims and cannot simply be read in.

15

DATED:  May 7, 2021                     Respectfully submitted,

                                        */s/Lionel M. Lavenue*
                                        Lionel M. Lavenue
                                        Virginia Bar No. 49,005
                                        lionel.lavenue@finnegan.com
                                        **FINNEGAN, HENDERSON, FARABOW,**
                                        **GARRETT & DUNNER, LLP**
                                        1875 Explorer Street, Suite 800
                                        Reston, VA 20190
                                        Phone:  (571) 203-2700
                                        Fax:     (202) 408-4400

                                        **ATTORNEY FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document via the Court's

CM/ECF system on May 7, 2021.

*/s/Lionel M. Lavenue*
Lionel M. Lavenue
