**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, | § § § | C.A. NO. 6:20-cv-00487-ADA |
| | § | C.A. NO. 6:20-cv-00488-ADA |
| | § | C.A. NO. 6:20-cv-00489-ADA |
| *Plaintiff*, | § | C.A. NO. 6:20-cv-00490-ADA |
| | § | C.A. NO. 6:20-cv-00491-ADA |
| v. | § | C.A. NO. 6:20-cv-00492-ADA |
| | § | C.A. NO. 6:20-cv-00493-ADA |
| ZTE CORPORATION, ZTE (USA) INC. | § | C.A. NO. 6:20-cv-00494-ADA |
| AND ZTE (TX), INC., | § | C.A. NO. 6:20-cv-00495-ADA |
| | § | C.A. NO. 6:20-cv-00496-ADA |
| *Defendants.* | § | C.A. NO. 6:20-cv-00497-ADA |
| | § | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR IMPROPER VENUE**

## Table of Contents

I.     Venue is Established at the Time of the Filing of the Operative Complaint......................1

II.    WSOU's § 1391 Analysis for Venue (under Steam of Commerce Theory) is Error..........2

III.   Under Proper Venue Analysis, Venue is Plainly Improper, per § 1400(b) ......................3

       A.    WSOU Suggests Facts Not of Record and Lacks Any Supporting Facts...............3

       B.    WSOU Incorrectly Alleges that Third-Party Locations are Places of
             Business.................................................................................................................5

       C.    WSOU Incorrectly Alleges that Third-Party Locations are Regular and
             Established Places of ZTE Business ....................................................................5

IV.    Conclusion: Dismissal of Defendants and These Suits is Proper for Misvenue.................5

With full flair—white gloves, top hat, and wand—WSOU[1] attempts a magic trick, to make

"a place of business" appear for ZTA and ZTX but WSOU's arguments are sophistry. Instead of

focusing on the merits of the pending Motion to Dismiss for Improper Venue under § 1400(b)—

the sole test for venue in patent cases—WSOU redirects the analysis to a stream-of-commerce

theory based on § 1391(d).[2] Unable to focus on the fact that ZTA and ZTX had no presence in

the WDTX, WSOU relies on faulty and speculative accusations of connections to third-party

warehouses and cell phone towers—which WSOU cannot substantiate, despite dozens of venue-

discovery subpoenas.[3] WSOU fails to reference documents corroborating its venue theory.

## I.     Venue is Established at the Time of the Filing of the Operative Complaint

Venue must be determined as to each defendant ***separately***, must be proper ***for all***

***defendants***, and venue, under § 1400(b), must be proper ***at the time of the complaint filing***.[4] The

active pleading, i.e., the Second complaint, was filed on June 3, 2020, and the second complaint

fails to incorporate the March 2020 original complaint; thus, the June 3 filing date is operative.[5]

WSOU argues for this Court to apply *Welch* and expand the venue analysis to months—if not

---

[1] Citations are to case nos. -00487 through -00497; specific cites reference to docket for case no. -00487.
[2] *See generally* Dkt. 86 (WSOU improperly uses venue discovery for erroneous stream-of-commerce legal theory). Contrary to WSOU's allegations, Defendants properly satisfied their venue discovery obligations.
[3] Defendants identified 14 issues in WSOU's sealed Response Brief, Dkt. 86, where WSOU provided faulty citations or failed to provide *any* citation whatsoever—thereby impeding Defendants' ability to identify protected material and reply herein. *See* L. Lavenue Decl. WSOU initially refused to address/adjust its response in anyway, and only agreed to correct *one* of the 14 issues after a thorough explanation from Defendants. Many of these issues pertain to alleged and speculative facts first raised in WSOU's response, Dkt. 86, thereby disadvantaging Defendants in replying (even if properly supported), and many of the issues remain. Given that WSOU has not provided support, nor has made an attempt to prove these statements, Defendants deny them.
[4] *Magnacoustics, Inc. v. Resonance Tech. Co.*, No. 97–1247, 1997 WL 592863, at *1 (Fed. Cir. Sept. 25, 1997); s*ee AGIS v. ZTE Corp. et al.*, 2018 WL 4854023, at *4 (E.D. Tex. Sept. 28, 2018); *Nutrition Physiology Corp. v. Enviros Ltd.*, 87 F.Supp.2d 648 (N.D. Tex. 2000) (the "court is to determine whether venue properly existed *at the time* the plaintiff's complaint was filed") (emphasis added); *see also Correct Transmission LLC v. ADTRAN, Inc.*, 6:20-cv-00669-ADA, Dkt. 59 (W.D. Tex. May 17, 2021) (J. Albright).
[5] *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985) ("[A]n amended complaint ordinarily supersedes the original and renders it of no legal effect, unless … refers to or adopts the earlier pleading.").

years—prior to either the March 2020 original complaint or the June 2020 second complaint. Dkt. 86, pp. 11-12, *see also Welch Sci. Co. v. Human Eng'g Inst., Inc.*, 416 F.2d 32, 36 (7th Cir. 1969). Texas courts do not adopt *Welch* for patent cases; thus, venue is determined from June 3, 2020.[6]

## II.   WSOU's § 1391 Analysis for Venue (under Steam of Commerce Theory) is Error

WSOU asks this Court to disregard Supreme, Federal, and District Court caselaw and precedent and apply the venue test under 28 U.S.C. § 1391(d) for domestic defendants ZTA and ZTX. It is indisputable that 28 U.S.C. § 1400(b) is the sole and exclusive statute for determining venue over domestic defendants in patent cases, and that § 1391(d) does not apply here.[7] Nevertheless, WSOU erroneously devotes nearly *eight* pages of its response brief requesting that this Court overturn Supreme Court, Federal Circuit, and District caselaw. Dkt. 86, pp. 12-20. Indeed, the Federal Circuit was clear in *In re BigCommerce* that only § 1400(b), not § 1391, applies for patent suits involving domestic corporations resident in multi-jurisdiction states.[8]

Despite the clear caselaw guidance, this is not the first time WSOU's counsel, the Etheridge Law Firm, argued for the application of § 1391(d) over § 1400(b) as it does here—all to no avail. In their first attempt, Judge Pitman of the WDTX held in *Toybox* that "Section 1391(d) does not govern corporate residency in civil actions for patent infringement. In such cases, venue is governed by Section 1400(b) as interpreted by the United States Supreme Court." *Interactive Toybox, LLC v. Walt Disney Co.*, 2018 WL 5284625, at *2 (W.D. Tex. 2018). In their second attempt, Judge Gilstrap of the EDTX declined in *Riot Games* to "reach such a strained reading of

---

[6] *Personal Audio LLC v. Google Inc.*, 280 F.Supp.3d 922 (E.D. Tex. 2017) (J. Clark) "'Bringing' a civil action refers to the act of filing a complaint. The term 'resides' is in the **present tense**. The phrase 'the defendant has committed acts' **applies to past acts**. But the phrase 'where the defendant has a regular and established place of business' **is in the present tense**. Congress could have used 'has had a regular and established place of business' but chose not to do so. Likewise, Congress did not tie venue to any jurisdiction in which a cause of action has accrued.") (emphasis added).
[7] *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1517 (2017).
[8] *See BigCommerce*, at 982 (domestic corporation "resides" in only 1 district, in multi-jurisdictional state).

*TC Heartland.*" *Uniloc 2017 LLC v. Riot Games, Inc.*, 2020 WL 1158611, at \*2 (E.D. Tex. 2020).

The evidence is clear that ZTA and ZTX are not residents of this District under § 1400(b). For instance, ZTA is a New Jersey corporation with its principal place of business in the NDTX. Dkt. 36, Wood Decl. ¶¶ 2-3. ZTX is a Texas corporation with its registered agent in the NDTX. Dkt. 36, Shan Decl. at ¶ 3.[9] Under *In re BigCommerce*, these defendants are residents of only *one* jurisdiction in Texas—and that is the NDTX. *BigCommerce*, 890 F.3d at 985 (Fed. Cir. 2018).

### III. Under Proper Venue Analysis, Venue is Plainly Improper, per § 1400(b)[10]

Venue is improper here for ZTA and ZTX because *neither* defendant has a regular established place of business in the WDTX, as required for venue under § 1400(b). *In re Cray Inc.*, 871 F.3d 1355, 1362-63 (Fed. Cir. 2017). Under this proper analysis, WSOU fails to even make any real argument to the contrary, devoting only a few pages to this central and controlling issue, instead directing the remaining twenty pages to irrelevant and erroneous § 1391 theories.[11] In fact, of the twenty third-party subpoenas WSOU served for venue discovery, WSOU's brief fails to reference a single corroborating document from any third-party production—thereby confirming, as Defendants have contended, that there are no relevant and timely third-party documents supporting WSOU's erroneous contention that ZTA and ZTX have any venue-establishing places of business in this District. *See generally* Dkt. 86 (WSOU's statements regarding discovery).

#### A. WSOU Suggests Facts Not of Record and Lacks Any Supporting Facts

---

[9] WSOU effectively argues that, under *Welch*, ZTX is a "resident" of both the WDTX and the NDTX, because it changed its registered agent between the Original and the Second complaint filings. *See* Dkt. 86, pp. 19-20. First, *Welch* does not apply here. Second, WSOU's argument runs counter to *BigCommerce* in that the Fed. Cir. already determined that in a multi-jurisdiction, a state corporation only resides in *one* district – making clear that corporation is only in 1 district. *BigCommerce*, 890 F.3d at 982 (Fed. Cir. 2018).

[10] WSOU incorrectly argues that "ZTE's motion to dismiss contains a single sentence arguing that WSOU fails to allege an act of infringement in this District" and WSOU then alleges that ZTE "makes no serious effort." Dkt. 86, p.8. Yet, contrary to WSOU's erroneous allegation, Defendants argued that "no Defendant has committed the alleged acts of infringement in the WDTX (or elsewhere)." Dkt. 47, pp. 14 and 17-20.

[11] *Compare* Dkt. 86, pp. 9-12 (WSOU's argument for second prong of § 1400(b)) with pp. 12-19 (WSOU's extraneous and erred argument for its § 1391(d) stream-of-commerce legal theory distraction).

To compensate for its unavailing position under § 1400(b), WSOU fills its brief with speculative statements without factual citations or legal support. ███████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████—there are no ZTE signs, no exposed ZTE equipment, no ZTE personnel on the premise, etc. In fact, the contracts that WSOU references, Dkt. 86, Exs. 5-8, specifically contemplate that any "On-site Engineering Services" will be based out of *Itasca, IL* or *Broomfield, CO*—no location in the WDTX is contemplated. Dkt. 86, Ex. 6, pp. 3-4. Furthermore, WSOU also erroneously speculates that "ZTE USA maintains a purchase money security interest" in equipment in WDTX towers and equates it to leasing. Dkt. 86, p. 12. WSOU, however, specifically subpoenaed Gogo—and Gogo produced *no* documents concerning towers in the WDTX, to support the pure speculation. The facts (or the *lack* thereof) all point to the resounding truth that ZTE holds no such interest, has no such leases, has no such equipment, and has no personnel, as to the referenced towers—especially not at the time of the relevant pleading.

Likewise, WSOU never establishes if the alleged third-party Ceva warehouse locations in the WDTX *actually* contain(ed) ZTE equipment. *See* Dkt. 86, p. 12. WSOU's sole reference regarding warehouses in WDTX *does not mention ZTE at all*.[12] Yet, WSOU proclaims, *without any evidence*, that "ZTE USA has stored its products in warehouses in Austin and San Antonio." Dkt. 86, p. 5.[13] WSOU improperly propagates this fallacy across its brief. *See generally* Dkt. 86.

---

[12] *Compare* Dkt. 86, Ex. 11 (no mention of ZTE), with Dkt. 86, p. 5 (WSOU stating that "ZTE USA has stored its products in warehouses in Austin and San Antonio"); *see also* Dkt. 86, Loveless Decl., ¶ 13 (WSOU counsel stating "**Exhibit 11** is a true and correct copy of a map showing the locations of warehouses used by ZTE and its logistics partner, Ceva").

[13] WSOU also provides no support for the similar allegation that ZTE uses "its warehouses in Austin and San Antonio" to store equipment from third-party Rise. Dkt. 86, p. 6.

And, like Gogo/Rise, WSOU never referenced any third-party production from Ceva to corroborate its speculations. Thus, Ceva warehouses in WDTX are not ZTE's places of business.[14]

**B.      WSOU Incorrectly Alleges that Third-Party Locations are Places of Business**

WSOU alleges that non-ZTE places are places of business of ZTE. Dkt. 86, pp. 9, 12. The "place," however, must be a "physical, geographical location in the district from which the business of the defendant is carried out." *In re Cray*, 871 F.3d 1355 at 1360 (Fed. Cir. 2017). Plainly, ZTE does not carry out business at third-party warehouse/cell tower locations in WDTX.

**C.      WSOU Incorrectly Alleges that Third-Party Locations are Regular and Established Places of ZTE Business**

WSOU alleges third-party locations (third-party warehouse/cell towers) are regular and established due to alleged temporary installation obligations in the WDTX. Dkt. 86, pp. 9-11. WSOU fails to support these allegations.[15] Neither the towers[16] nor warehouses were ever "places of the defendant," as required to establish venue. *In re Cray*, 871 F.3d at 1360 (Fed. Cir. 2017).[17]

**IV.      Conclusion: Dismissal of Defendants and These Suits is Proper for Misvenue**

WSOU opposes transfer under §1406, Dkt. 86, fn. 1, thus it is only appropriate for the Court to dismiss these suits for improper venue under FRCP 12(b)(3) for each Defendant.

---

[14] *See Correct Transmission LLC v. ADTRAN, Inc.*, 6:20-cv-00669-ADA, *6 (W.D. Tex. May 17, 2021) (J. Albright finding that a third-party office location failed the *In re Cray* test because it was not and never was a place of business of defendant, and that an independent contractor relationship is insufficient to satisfy this element); *see also National Steel Car Ltd. v. The Greenbrier Companies, Inc.*, 6:19-cv-00721-ADA, *5-9 (W.D. Tex. July 27, 2020) (J. Albright finding no alter-ego relationship).

[15] Rather, WSOU's citations actually suggest the opposite—that these third parties no longer use *any* ZTE products in *any* location. *See* Dkt. 86, fn. 17, p. ii (as of February 2020, "ZTE . . . has largely abandoned support . . . and the availability of replacement components in the marketplace is now rapidly diminishing.")

[16] The Federal Circuit held that neither "installation activity," nor "maintenance activities" are sufficient for establishing venue. *In re Google*, 949 F.3d 1338 at 1346 (Fed. Cir. 2020). WSOU attempts to distinguish from *Google*, Dkt. 86, fn. 16, by arguing ISP's installation of servers are less ancillary to their business than as to ZTE's business of selling products—which is nonsensical.

[17] *See also Correct Transmission LLC v. ADTRAN, Inc.*, 6:20-cv-00669-ADA, *6 (W.D. Tex. May 17, 2021) (J. Albright ruling).



DATED:  June 25, 2021                                    Respectfully submitted,


*/s/Lionel M. Lavenue*
Lionel M. Lavenue
Virginia Bar No. 49,005
lionel.lavenue@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP**
1875 Explorer Street, Suite 800
Reston, VA 20190
  Phone:  (571) 203-2700
  Fax:     (202) 408-4400

  Attorney for Defendants,
  ZTE Corporation
  ZTE (USA), Inc.
  ZTE (TX), Inc.

**PUBLIC VERSION**


**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 25, 2021, all counsel of record were served

with the foregoing document via CM-ECF and electronic mail.

/s/Lionel M. Lavenue
Lionel M. Lavenue

7